# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL EARL SIMMONS** | **CIVIL ACTION NO.** |
| **VERSUS** | **20-819-SDD-EWD** |
| **GREYSAN MOEHRS, ET AL.** | |

## NOTICE AND ORDER

This is a civil action involving claims for damages allegedly sustained by Michael Earl Simmons ("Mr. Simmons") and his minor child, Ryne Simmons ("Ryne") (collectively, "Plaintiffs"), as a result of a motor vehicle collision that occurred on or about October 31, 2019.[1] Specifically, Plaintiffs claim they were injured when a vehicle driven by Greysan Moehrs ("Moerhs") "crashed into the rear of [Plaintiff's] vehicle."[2] Plaintiffs also claim that Moehrs was insured by Pekin Insurance Company ("Pekin") at the time of collision.[3] On October 27, 2020, Plaintiffs filed a Petition for Damages ("Petition") against Moerhs and Pekin (collectively, "Defendants") in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana.[4] Defendants removed the matter on December 4, 2020, asserting federal subject matter under 28 U.S.C. § 1332.[5]

Proper information regarding the citizenship of all parties, and the amount in controversy, is necessary to establish the Court's diversity jurisdiction, as well as to make the determination required under 28 U.S.C. § 1441 regarding whether the case was properly removed to this Court.

---

[1] R. Doc. 1-1, ¶¶ 3-8.
[22] *Id.*
[3] *Id.* at ¶ 15.
[4] *Id.*
[5] R. Doc. 1.

While it appears from the Notice of Removal that complete diversity of citizenship exists,[6] it is not clear from the Notice of Removal or the Petition whether Plaintiffs' claims likely exceed $75,000, exclusive of interest and costs.[7] The Petition alleges that Plaintiffs were injured when Moehrs' vehicle "crashed into the rear of [Plaintiffs'] vehicle…causing a severe motor vehicle crash and bodily injury."[8] Plaintiffs claim Mr. Simmons' "suffered acute injuries to his neck, back, and body as a whole," and he seeks the following damages: "(A) physical pain and suffering – past, present, and future; (B) mental pain, anguish, and distress – past, present, and future; (C) medical expenses – past, present, and future; (D) loss of enjoyment of life – past, present, and future; and (E) lost wages – past, present, and future."[9] Relatedly, Plaintiffs claim Ryne "suffered acute soft tissue injuries to his neck, back, and body as a whole," and Mr. Simmons, on behalf of Ryne, seeks the following damages: "(A) physical pain and suffering – past, present, and future; (B) mental pain, anguish, and distress – past, present, and future; and (C) medical expenses – past, present, and future."[10]

In their Notice of Removal, Defendants aver that "more than $75,000, exclusive of costs and interests is at stake in this litigation, and the jurisdictional amount-in-controversy is met"

---

[6] Per the Notice of Removal, Defendants allege (1) that Plaintiffs are "domiciled in Livingston Parish and citizens of the State of Louisiana"; (2) that Moehrs is a citizen of Illinois because, although a student a Southeastern Louisiana University in Hammond, Louisiana, Moehrs permanently resides and is domiciled in Illinois the site of his original domicile, returns to Illinois during school breaks, and has no intention of changing his domicile by remaining in Louisiana after school; and (3) that Pekin is an "Illinois insurance company with its principal place of business located in Pekin, Illinois." R. Doc. 1, ¶¶ 19-22. *See also* R. Doc. 1-4 (Declaration of Moehrs). These allegations are sufficient to establish citizenship for diversity purposes. *See, e.g., Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974) (Allegations of residency are not sufficient to establish the citizenship of an individual; rather, "[f]or diversity purposes, citizenship means domicile; mere residence in the State is not sufficient."); *Getty Oil, Div. of Texaco v. Ins. Co. of North America*, 841 F.2d 1254, 1259 (5th Cir. 1988) (in diversity cases involving corporations, "allegations of citizenship must set forth the state of incorporation as well as the principal place of business of each corporation."). Accordingly, all named parties are completely diverse, as Plaintiffs are citizens of Louisiana and Defendants are citizens of Illinois.
[7] *See* 28 U.S.C. § 1332(a).
[8] R. Doc. 1-2, ¶¶ 3-6.
[9] *Id.* at ¶¶ 10, 12.
[10] *Id.* at ¶¶ 11, 13.

based on (1) Mr. Simmons' foregoing injuries and damages allegations, (2) Mr. Simmons' medical records and information contained, including the fact that Mr. Simmons has incurred "$22,825.00 in claimed medical expenses to date," and (3) damages awards in cases "involving claims similar to those as alleged in Plaintiff's Petition for Damages."[11]

The foregoing does not provide enough information to determine if Mr. Simmons' claims will likely exceed $75,000, exclusive of interest and costs.[12] First, the allegations in the Petition do not provide enough information to determine if Mr. Simmons' claims will likely exceed $75,000, exclusive of interest and costs. Mr. Simmons' general allegations of "bodily injuries" and demands for general categories of damages (*e.g.*, physical pain and suffering, mental anguish, loss of enjoyment of life, lost wages, medical expenses, etc.)[13] are insufficient to establish the amount in controversy. "Courts have routinely held that pleading general categories of damages, such as 'pain and suffering, disability, lost wages, loss of earning capacity, medical expenses, etc.,' without any indication of the amount of the damages sought, does not provide sufficient information for the removing defendant to meet his burden of proving that the amount in controversy is satisfied under the 'facially apparent' test."[14]

Second, Defendants attempt to show that the amount in controversy is satisfied through

---

[11] R. Doc. 1, ¶¶ 13-18.
[12] In the Notice of Removal, Defendants focus on Mr. Simmons' alleged injuries and damages in their effort to establish the amount in controversy. R. Doc. 1, ¶¶ 13-18. Defendants note that Ryne "underwent one visit for treatment allegedly related to injuries caused by the accident," and state that Ryne's claims "almost certainly do not alone meet the jurisdictional threshold." *Id.* at ¶ 17. Ryne's claims for general categories of damages, combined with a single visit for treatment related to injuries purportedly sustained during the collision, are not sufficient to establish the amount in controversy requirement. Despite this, Defendants suggest that this Court can exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over Ryne's claims because they are part of the same case or controversy as Mr. Simmons' claims, over which Defendants claim this Court has jurisdiction under § 1332. However, for the reasons stated in this Order, the Court cannot determine whether it has jurisdiction over Mr. Simmons' claims because it cannot tell whether his claims satisfy the amount in controversy requirement. Thus, the Court cannot determine whether it can properly exercise supplemental jurisdiction over Ryne's claims under § 1367(a) at this time.
[13] R. Doc. 1-2, ¶¶ 7, 9.
[14] *Davis v. JK & T Wings, In*c., No. 11-501, 2012 WL 278728, at *3 (M.D. La. Jan. 6, 2012), and cases cited there.

3

information contained in Mr. Simmons' medical records.[15] Specifically, Defendants allege that Mr. Simmons' medical records show (a) that he was "initially diagnosed with a sprain of ligaments of the cervical and thoracic spine, cervical disc disorder with radiculopathy in the mid-cervical region, tension headaches, and muscle spasm"; (b) that a January 2020 cervical MRI "revealed small bulges along the cervical spine with a small posterior central disc herniation at C3-4 indenting the ventral surface of the cord, as well as facet arthropathy and uncovertebral spurring causing a few levels of foraminal narrowing"; (c) that Dr. Turnipseed, who previously treated Mr. Simmons in 2017 for neck pain and headaches, recommended epidural injections after seeing Mr. Simmons in February 2020 because Mr. Simmons' "prior symptoms had returned"; and (d) that Mr. Simmons "underwent approximately nine (9) months of therapeutic treatment," including "one (1) round of bilateral occipital nerve blocks and two (2) rounds of cervical epidural steroid injections."[16] Defendants also allege that Mr. Simmons' has incurred "$22,825.00" in medical expenses to date.[17]

These allegations are also insufficient to establish that Mr. Simmons' claims likely exceed $75,000, exclusive of interest and costs, for several reasons. Defendants have not provided details about Mr. Simmons' prognosis or recommended future treatment, whether Mr. Simmons has been recommended for surgery, or whether Mr. Simmons is working/can work. Indeed, Mr. Simmons' medical records appear to show that he was "released from care" on August 28, 2020, and there is no indication that future treatment is needed or expected.[18]

---

[15] R. Doc. 1, ¶ 14. In conjunction with their Notice of Removal, Defendants filed Plaintiffs' medical records under seal. R. Doc. 6.
[16] R. Doc. 1, ¶ 14. *See also* R. Doc. 6.
[17] *Id*. at ¶ 14.
[18] *See* R. Doc. 6, pp. 73-74 (August 28, 2020 treatment note explaining that Mr. Simmons "has reached maximal medical improvement" and "was "released from care today.") *See also id*. at pp. 103 – 104 (showing that Mr. Simmons' last epidural steroid injection was administered on May 12, 2020).

Likewise, there is no specific information about Plaintiff's claim for lost wages. There is also no evidence of any settlement demand, discovery responses, or other relevant documents that would have bearing on the amount in controversy.[19]

Additionally, Defendants reliance on *Thomas v. Louis Dreyfus Commodities, LLC* to establish the amount in controversy at this juncture is misplaced.[20] In *Thomas*, the Court issued a *sua sponte* order requiring briefing on the amount in controversy because it was not facially apparent from the notice of removal and petition if plaintiffs' claims exceeded the jurisdictional threshold. Ultimately, the Court determined that the amount in controversy was satisfied after reviewing the parties' memoranda on this issue—both of which argued that the amount in controversy requirement was satisfied.[21] In making this determination, the Court noted that "the potential award of general damages where herniated discs are alleged and the plaintiff has not undergone surgery is significant, and courts have found the amount in controversy satisfied where such allegations are made."[22] However, in *Thomas* this Court also explained that this Court recognizes that "[w]hether or not a herniated disc satisfies the amount in controversy often turns on whether surgery is recommended."[23] Accordingly, courts have found the lack of a recommendation for surgery to be a significant factor, if not dispositive, in determining whether a plaintiff seeking damages including those for a herniated disc meets the amount in

---

[19] When—as here—the facially apparent test is not met, the district court may require the parties to "submit summary-judgment-type evidence, relevant to the amount in controversy at the time of removal." *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995); *Delta Coatings, Inc. v. Travelers Property Casualty Co. of America*, No. 15-222, 2016 WL 7851411, * 2 (M.D. La. Oct. 21, 2016). Here, the only "summary-judgment-type evidence" before the Court is Mr. Simmons' medical records, which are discussed above. R. Doc. 6.
[20] No. 15-394, 2016 WL 1317937 (M.D. La. Mar. 11, 2016).
[21] *Id*. at *2, 5.
[22] *Id*. at * 4-5. *See, e.g.*, *Reeves v. TPI Restaurants, Inc.*, No. 05-1778, 2007 WL 1308380, at *2 (W.D. La. Apr. 13, 2007), *report and recommendation adopted*, ECF No. 26 (W.D. La. May 3, 2007); *McDonald v. Target Corp. of Minn.*, No. 11-598, 2011 WL 2160495, at *1 (E.D. La. June 1, 2011).
[23] *Id.* at *4. *See also Robinson v. Kmart Corp.*, No. 11-12, 2011 WL 2790192, at *4 n.4 (M.D. La. Apr. 28, 2011), *report and recommendation adopted*, 2011 WL 2937952 (M.D. La. July 14, 2011).

controversy requirement when balanced with other factors in the record.[24] Further, a general review of quantum cases demonstrates that general damages awards for multiple bulging discs often (if not usually) fail to exceed $30,000-$45,000, even where the plaintiff is actually treated with steroid injections.[25]

Finally, the Court cannot determine if Mr. Simmons' injuries are sufficiently similar to the injuries sustained by the plaintiffs in the other cases relied on by Defendants based on the information in the Petition, Notice of Removal, and Mr. Simmons' medical records.[26]

---

[24] *See, e.g.*, *Hebert v. Hanco Nat. Ins. Co.*, No. 07-362, 2009 WL 255948, at *4-5 (M.D. La. Feb. 3, 2009) (amount in controversy not satisfied where plaintiff "suffers from a herniated disc, without any recommendation for surgery" and the plaintiff "continues to work, continues to engage in activities of daily living, and does not seek damages for mental anguish"); *Espadron v. State Farm Mut. Auto. Ins. Co.,* No. 10-53, 2010 WL 3168417 (E.D. La. Aug. 9, 2010) (amount in controversy not satisfied where plaintiff in car crash suffered a "herniated cervical disc [or] segmental cervical instability" and a "herniated lumbar disc [or] segmental lumbrosacral instability" and was a "potential surgical candidate" and plaintiff stipulated that his damages did not exceed $50,000).

[25] *See, e.g.*, *Clement v. Carbon*, 153 So. 3d 460, 464 (La. App. 5th Cir. 2014) (affirming award of $30,000 in general damages for bulging disc at C5-6); *Moody v. Cummings*, 37 So. 3d 1054, 1062 (La. App. 4th Cir. 2010) (affirming award of $45,000 in general damages for minimal bulging at C2-3, C4-5, and C5-6, which appeared to be degenerative, and not traumatic in origin, and pain for a period of 4 years); *Mixter v. Wilson*, 54 So. 3d 1164, 1169 (La. App. 5th Cir. 2010) (increasing award for general damages to $30,000 where MRI revealed two ruptured discs and one bulging disc, and plaintiff was treated with epidural steroid injections); *DiMaggio v. Williams*, 900 So. 2d 1014, 1019 (La. App. 5th Cir. 2005) (affirming general damages award of $15,000 for two bulging discs); *but see Locke v. Young*, 42,703 (La. App. 2nd Cir. 2007), 973 So. 2d 831, 847 (reducing award of $150,000 in general damages award for two bulging discs to $75,000).

[26] *See* R. Doc. 1, ¶ 15 (referencing *Thomas*, 2016 WL 1337655; *Collier v. Benedetto*, 897 So.2d 775 (La. App. 5 Cir. 2005); *Perez v. State ex rel. Crescent City Connection, Div. of Dep't. of Transp. & Dev.*, 753 So.2d 913 (La. App. 4 Cir. 200); *Wehbe v. Waguespack*, 720 So.2d 1267 (La. App. 5 Cir. 1998)). For example, in *Thomas*, the plaintiff, who argued that his claims exceeded $75,000, exclusive of interest and costs, sustained injuries to his head, left hand, back, and left foot and daily headaches, which rendered him "more forgetful." 2016 WL 1337655, at *3-5. He was diagnosed with "concussion with loss of consciousness, post-concussion syndrome, headaches, carpal tunnel syndrome, herniated lumbar disc(s), bulges of the cervical spine, and neck pain." *Id*. At the time of removal, plaintiff had incurred $26,637.57 in medical expenses, which were "continu[ing] to accumulate," and "a total of $29,067.97 in worker's compensation payments had been made on plaintiff's behalf." *Id*. Likewise, in *Wehbe*, the plaintiff experienced pain in his left hand, arm, shoulder, neck, and lower back, as well as dizziness, following a motor vehicle accident, and he was diagnosed with a herniated disc at C3-4, aggravation of pre-existing degenerative lumbar spine disease, and frozen shoulder syndrome. 720 So.2d 1267, 1271-73 (La. App. 5 Cir. 10/28/98). Plaintiff's treating neurosurgeon recommend that plaintiff undergo an anterior cervical fusion, which plaintiff testified that he "plan[ned] to undergo" given that he was "in more pain [during trial] than on the day of the accident." *Id*. Finally, plaintiff's treating neurosurgeon testified at trial that plaintiff had "a 10% whole man physical disability rating, either with or without surgery, as a result of the herniated disc in his neck." *Id*. Finally, in *Collier*, the plaintiff was awarded $75,000 in general damages for injuries to his knee, thigh, shoulder, back, and neck, including a small right disc protrusion at C5-C6 and cervical and lumbar muscle strains, resulting in twenty-seven months of treatment. Here, Mr. Simmons treated for about one-third of the time as the *Collier* plaintiff, and there is no information before the Court to suggest that Mr. Simmons will need future treatment, has

Although Plaintiff has not filed a Motion to Remand, the Court *sua sponte* raises the issue of whether it may exercise diversity jurisdiction in this matter, specifically whether the amount in controversy requirement has been met.[27]

Accordingly,

**IT IS ORDERED** that by no later than **January 21, 2021**, Defendants shall file a memorandum and supporting evidence concerning whether the amount in controversy requirement of 28 U.S.C. § 1332 is met.

**IT IS FURTHER ORDRED** that by no later than **February 4, 2021**, Plaintiffs shall file either: (1) a Notice stating that Plaintiffs do not dispute that Defendants established the jurisdictional requirements of 28 U.S.C. § 1332, or (2) a Motion to Remand.

The case will be allowed to proceed if jurisdiction is adequately established.

Signed in Baton Rouge, Louisiana, on January 8, 2021.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

been recommended for surgery for any of his injuries, is disabled, or has missed any work or is unable to work because of this injuries.

[27] *See McDonal v. Abbott Laboratories*, 408 F.3d 177, 182, n. 5 (5th Cir. 2005) ("[A]ny federal court may raise subject matter jurisdiction *sua sponte*.").